Sealed
Public and unofficial staff access to this instrument are prohibited by court order

United States Courts
Southern District of Texas
FILED
*January 14, 2026*
Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v.  § | Criminal No. **4:26-cr-00023** |
| § | UNDER SEAL |
| JOHN STEVENSON BYNON, JR., § | |
| § | |
| Defendant. § | |

## INDICTMENT

The Grand Jury charges:

### General Allegations

At all times material to this Indictment, unless otherwise specified:

### The Medicare Program

1. The Medicare Program (Medicare) was a federally funded healthcare program providing health care benefits to certain individuals who were 65 years or older or disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services, through its agency, the Centers for Medicare and Medicaid Services (CMS), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3. Medicare was divided into different parts. Medicare Part A covered in-patient hospital care, skilled nursing facility care, hospice card and home health care services. Medicare Part B paid for certain physician services, outpatient services, and other services, including

1

laboratory services, durable medical equipment, and other services not covered under Part A.

4. Medicare coverage for organ transplants was provided under a combination of Part A and Part B services. For organ transplant patients, Medicare Part A covered necessary tests, labs, and exams, services for heart, lung, kidney, pancreas, intestine, and liver organ transplants, immunosuppressive (transplant) drugs, follow-up care, and procurement of organs. Medicare Part B covered physician services associated with heart, lung, kidney, pancreas, intestine, and liver organ transplants, and immunosuppressive drugs (transplant drugs) if Medicare paid for the transplant.

### The Organ Procurement and Transplant Network

5. The Organ Procurement and Transplant Network (OPTN) was established in 1984 by the National Organ Transplant Act passed by Congress. The OPTN was tasked with maintaining a national registry for organ matching and called for the network to be operated by a private organization under federal contract. This contract was continuously, without interruption, awarded to the United Network of Organ Sharing (UNOS) since its inception.

6. UNOS was a private, non-profit organization that managed the United States organ transplant system under contract with the federal government as authorized by Title 42, Code of Federal Regulations, Section 121. UNOS was responsible for managing the national transplant waiting list, matching potential transplant donors and recipients, maintaining the database that contains all organ transplant data for every transplant that occurs in the United States, ensuring that patients receive a fair chance at receiving organ they need without regard for age, sex, ethnicity, religion, financial/social status, monitoring every organ match to ensure that organ allocation polices are followed, and public education and outreach regarding organ donation and transplantation.

7. UNOS provided technology used by organ donation and transplant assist in matching organ donors and patients in need of organs, collectively identified as "UNet." UNet includes "Waitlist" which maintains a list of patients in need of transplants, "DonorNet" which maintains a list of organ donors, "TransNet" which ensures that organs are match correctly and efficiently including labeling and packaging, and other technologies which aid in the process of finding compatible matches between donors and transplant recipients including Transplant Information Electronic Data Interchange (TIEDI).

8. Through UNet, a patient in need of an organ transplant has medical data entered in their medical record as part of the matching criteria to receive an organ. In addition to factors related to the patient's immunological system, parameters in UNet include physical parameters for the organ match such as the size and weight of matching donor, known as donor matching criteria. These parameters contribute to the ability of the transplant recipient to be matched with a transplant donor and therefore the likelihood of a successful transplant.

9. Funding for the OPTN contractor is partially derived based on federal grants from the Health Resources and Services Administration (HRSA). UNet data in the possession of UNOS is considered HIPPA protected information and applicable protections under Public Law 104-191 apply to the records contained in UNet.

## The Defendant and Relevant Entities

10. Defendant **JOHN STEVENSON BYNON, JR. (BYNON)** a resident of Houston, Texas, was a physician licensed to practice medicine in the State of Texas. **BYNON** was the Director of Abdominal Organ Transplantation and the Surgical Director for Liver Transplantation of Memorial Hermann Health System (MHHS) Texas Medical Center (TMC), located at 6411 Fannin St, Houston, TX 77030. **BYNON** also served as the primary surgeon for the liver program at MHHS TMC for their membership to the OPTN.

11. MHHS TMC was the primary teaching hospital for the McGovern Medical School at The University of Texas Health Science Center at Houston (UTHealth). MHHS TMC provides a plethora of hospital services including organ transplantation and specifically, abdominal organ transplantation.

## Patient C.C.

12. Patient C.C. was a Medicare beneficiary enrolled in MHHS TMC's Liver Transplant Program. Patient C.C. was activated on the UNOS Liver Transplant Waitlist (Waitlist) on March 22, 2023, under the care of **BYNON**. Unknown to other members of MHHS TMC's Liver Transplant Program's medical care team, **BYNON** entered false donor matching criteria in Patient C.C.'s medical records within UNet. **BYNON**'s false statements rendered Patient C.C. either severely restricted or functionally ineligible to receive a donor organ offer for approximately 149 days. During that time, Patient C.C., Patient C.C.'s family, and other providers on Patient C.C.'s medical care team were not aware that Patient C.C. was ineligible to receive a donor organ. During this same time frame, Patient C.C. received health care benefits, items, and services as if he were eligible to receive donor organ offers. Patient C.C. died on February 24, 2024, under the care of **BYNON**.

**Patient A.P.**

13. Patient A.P. was a Medicare beneficiary enrolled in MHHS TMC's Liver Transplant Program. Patient A.P. was activated on the Waitlist on February 13, 2024, under the care of **BYNON**. Unknown to other members of MHHS TMC's Liver Transplant Program's medical care team, **BYNON** entered false donor matching criteria in Patient A.P.'s medical records within UNet. **BYNON**'s false statements rendered Patient A.P. either severely restricted or functionally ineligible to receive a donor organ offer for approximately 38 days. During that time, Patient A.P., Patient A.P.'s family, and other providers on Patient A.P.'s medical care team were not aware that Patient A.P. was ineligible to receive a donor organ. During this same time frame, Patient A.P. received health care benefits, items, and services as if he were eligible to receive donor organ offers.

14. On March 22, 2024, MHHS TMC leadership received notification of **BYNON**'s false statements within UNet. One day after this notification, **BYNON** corrected his earlier false statements as to Patient A.P.'s donor matching criteria allowing Patient A.P. to be eligible to receive donor organ offers again. MHHS TMC's Liver Transplant Program was subsequently inactivated and Patient A.P. sought care at St. Luke's Hospital's Liver Transplant Program. Patient A.P. was activated on the Waitlist under the care of St. Luke's Hospital on May 14, 2024, and received a successful liver transplant within one month in June 2024.

**Patient R.O.**

15. Patient R.O. was a Medicare beneficiary enrolled in MHHS TMC's Liver Transplant Program. Patient R.O. was activated on the Waitlist on February 10, 2023, under the care of **BYNON**. Unknown to other members of MHHS TMC's Liver Transplant Program's medical care team, **BYNON** entered false donor matching criteria in Patient R.O.'s medical

records within UNet. **BYNON**'s false statements rendered Patient R.O. either severely restricted or functionally ineligible to receive a donor organ offer for approximately 69 days. During that time, Patient R.O., Patient R.O.'s family, and other providers on Patient R.O.'s medical care team were not aware that Patient R.O. was ineligible to receive a donor organ. During this same time frame, Patient R.O. received health care benefits, items, and services as if he were eligible to receive donor organ offers.

16.     On or about December 22, 2023, **BYNON** corrected his previous false statements as to Patient R.O.'s donor matching criteria within UNet. Soon after Patient R.O. received a donor organ offer and transplantation was attempted on December 26, 2023. During the transplant surgery, with no other attending surgeon present, **BYNON** determined that Patient R.O.'s anatomy was too complex for transplantation and the surgery was aborted. Patient R.O. died hours after the failed surgery. The donor organ accepted for Patient R.O. was then transplanted into a different MHHS patient at the direction of **BYNON**.

### Patient P.P.

17.     Patient P.P. was a Community Health Choice beneficiary enrolled in MHHS TMC's Liver Transplant Program. Patient P.P. was activated on the Waitlist on April 25, 2023, under the care of **BYNON**. Unknown to other members of MHHS TMC's Liver Transplant Program's medical care team, **BYNON** entered false donor matching criteria in Patient P.P.'s medical records within UNet. **BYNON**'s false statements rendered Patient P.P. either severely restricted or functionally ineligible to receive a donor organ offer for approximately 189 days. During this time frame, Patient P.P. turned 65 years old, becoming a Medicare beneficiary. Patient P.P., Patient P.P.'s family, and other providers on Patient P.P.'s medical care team were not aware that Patient P.P. was ineligible to receive a donor organ. During this same time frame, Patient P.P.

received health care benefits, items, and services as if she were eligible to receive donor organ offers.

18. On March 22, 2024, MHHS leadership received notification of **BYNON**'s false statements within UNet. Four days after the notification, **BYNON** corrected his earlier false statements as to Patient P.P.'s donor matching criteria allowing Patient P.P. to be eligible to receive donor organ offers again. MHHS TMC's Liver Transplant Program was subsequently inactivated, and Patient P.P. sought care at Houston Methodist Hospital's Liver Transplant Program. Patient P.P. was activated on the Waitlist under the care of Houston Methodist Hospital and received a successful liver transplant. However, due to the progression of her illness while awaiting a liver transplant, she would also require a kidney transplant.

### Patient O.F.

19. Patient O.F. was a Medicare beneficiary presented to MHHS TMC's Liver Transplant Program for an urgent surgical evaluation for liver transplantation on December 22, 2023. **BYNON** evaluated and spoke with Patient O.F. and noted in her medical record that she would require urgent liver transplantation. Patient O.F. was enrolled in MHHS TMC's Liver Transplant Program and activated on the Waitlist on December 23, 2023, at 8:33 PM. Less than one day later on December 24, 2023, at 2:38 PM, **BYNON** entered false donor matching criteria in Patient O.F.'s medical records within UNet. **BYNON**'s false statements rendered Patient C.C. either severely restricted or functionally ineligible to receive a lifesaving donor organ offer unbeknownst to Patient O.F., Patient O.F.'s family, and other providers on Patient O.F.'s medical care team. Patient O.F. died two days later on December 26, 2023.

## COUNTS ONE THROUGH FIVE

**False Statements Relating to Health Care Matters**
**(18 U.S.C. § 1035)**

20.     Paragraphs 1 through 20 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

21.     On or about the dates set forth below, in the Houston Division of the Southern District of Texas, defendant,

**JOHN STEVENSON BYNON, JR.**

did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations, and make and use materially false writings and documents, as set forth below, knowing the same to contain materially false, fictitious, and fraudulent statements and entries, in connection with the delivery of and payment for health care benefits, items, and services, and in a matter involving a health care benefit program, specifically Medicare:

| Count | Date | Patient | Description | Nature of Falsity |
|---|---|---|---|---|
| 1 | March 22, 2023 - February 14, 2024 | C.C. | Medical Record | Donor matching criteria |
| 2 | February 13, 2024 – March 23, 2024 | A.P. | Medical Record | Donor matching criteria |
| 3 | February 10, 2023 – December 22, 2023 | R.O. | Medical Record | Donor matching criteria |
| 4 | April 25, 2023 – March 26, 2024 | P.P. | Medical Record | Donor matching criteria |
| 5 | December 23, 2023 – December 24, 2023 | O.F. | Medical Record | Donor matching criteria |

In violation of Title 18, United States Code, Section 1035.

## NOTICE OF CRIMINAL FORFEITURE
### (18 U.S.C. § 982(a)(7))

Pursuant to Title 18, United States Code, Section 982(a)(7), the United States of America gives notice to defendant, **JOHN STEVENSON BYNON, JR.,** that, upon conviction of Counts One through Five, all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offenses is subject to forfeiture.

### Money Judgment and Substitute Assets

Defendant **JOHN STEVENSON BYNON, JR.** is notified that upon conviction, a money judgment may be imposed against the defendant. In the event that one or more conditions listed in Title 21, United States Code, Section 853(p) exists, the United States will seek to forfeit any other property of the defendant up to the amount of the money judgment.

A TRUE BILL:

Original Signature on File
FOREPERSON OF THE GRAND JURY

NICHOLAS J. GANJEI
United States Attorney

*Karen Lansden*
KAREN LANSDEN
SHERIN DANIEL
SUZANNE ELMILADY
Assistant United States Attorneys

9