United States District Court
Southern District of Texas

**ENTERED**

May 18, 2026

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CRIMINAL ACTION NO. H-26-23 |
| | § | |
| JOHN STEVENSON BYNON, JR., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

A grand jury indicted Dr. Steve Bynon for making false statements in connection with a health care benefit program, in violation of 18 U.S.C. § 1035. (Docket Entry No. 1). The United States alleges that Dr. Bynon falsely stated on the United Network of Organ Sharing's donor-matching system that his patients needed organs from donors of unrealistic age and weight criteria; for example, by stating that his adult-aged patients needed organs from small children. (*See id.* ¶¶ 12–19; Docket Entry No. 29 at 4). The United States alleges that Dr. Bynon's false statements manipulated the donor-matching system to make his patients "either severely restricted or functionally ineligible to receive a donor organ offer." (Docket Entry No. 1 ¶ 12). Dr. Bynon argues that he did not make false statements because he placed his patients on an internal or informal hold while they were not healthy enough to receive a transplant.

Dr. Bynon has asserted his "right to a speedy and public trial." U.S. CONST. amend. VI. The parties agreed to a scheduling order that set trial for June 22, 2026. (Docket Entry No. 26). The United States has moved to continue the trial setting and to designate this case as "complex" under the Speedy Trial Act. (Docket Entry No. 34). Because this case does not warrant designation as complex, the United States's motion, (Docket Entry No. 34), is denied.

I.      **Background**

    A.      **The Indictment Allegations**

In 1984, Congress, through the National Organ Transplant Act, established the Organ Procurement and Transplant Network. (Docket Entry No. 1 ¶ 5). Congress directed the Transplant Network to maintain a national registry for organ matching and to contract a private organization to operate the network. (*Id.*). The Transplant Network awarded the contract to the United Network of Organ Sharing ("UNOS"), which has operated the national registry since its inception. (*Id.*). Under its contract with the Transplant Network, UNOS is "responsible for managing the national transplant waiting list, matching potential transplant donors and recipients, maintaining the database that contains all organ transplant data for every transplant that occurs in the United States, [and] ensuring that patients receive a fair chance at receiving organ they need without regard for age, sex, ethnicity, religion, financial/social status . . . ." (*Id.* ¶ 6).

UNOS created UNet, a technological platform to help match organ donors and potential recipients. (*Id.* ¶ 7). UNet includes a "Waitlist," which is a list of patients in need of transplants; a "DonorNet," which is a list of organ donors; "TransNet," which ensures that organs are matched correctly and efficiently; and other technologies, such as the Transplant Information Electronic Data Interchange, that help find compatible matches between donors and transplant recipients. (*Id.*).

To use UNet's matching systems, patients must enter their medical data. (*Id.* ¶ 8). UNet's matching system includes facts about a patient's immunological system and "donor matching criteria," such as the size and weight of a matching donor. (*Id.*). "These parameters contribute to the ability of the transplant recipient to be matched with a transplant donor and therefore the likelihood of a successful transplant." (*Id.*).

John Stevenson Bynon, Jr., is a Houston physician licensed to practice medicine in Texas. (*Id.* ¶ 10). Dr. Bynon was the Director of Abdominal Organ Transplantation and the Surgical Director for Liver Transplantation of Memorial Hermann Health System's Texas Medical Center. (*Id.*). He served as the Medical Center's primary surgeon for the liver program in the Transplant Network. (*Id.*).

The United States alleges that Dr. Bynon "entered false donor matching criteria" in five patients' "medical records within UNet." (*Id.* ¶ 12; *see also id.* ¶¶ 13, 15, 17, 19). The United States alleges that by entering false donor matching criteria, Dr. Bynon made his patients "either severely restricted or functionally ineligible to receive a donor organ offer" through UNet's matching system. (*Id.* ¶ 12; *see also id.* ¶¶ 13, 15, 17, 19).

A grand jury indicted Dr. Bynon for five counts of making false statements relating to health care matters, in violation of 18 U.S.C. § 1035, as shown in the following table:

| Count | Date | Patient | Description | Nature of Falsity |
|---|---|---|---|---|
| 1 | March 22, 2023 – February 14, 2024 | C.C. | Medical Record | Donor matching criteria |
| 2 | February 13, 2024 – March 23, 2024 | A.P. | Medical Record | Donor matching criteria |
| 3 | February 10, 2023 – December 22, 2023 | R.O. | Medical Record | Donor matching criteria |
| 4 | April 25, 2023 – March 26, 2024 | P.P. | Medical Record | Donor matching criteria |
| 5 | December 23, 2023 – December 24, 2023 | O.F. | Medical Record | Donor matching criteria |

(*Id.* at 8).

## B.    The Procedural History

In January, before the indictment was unsealed, Dr. Bynon's counsel met with prosecutors and presented a 51-slide PowerPoint presentation that outlined his key defenses. (Docket Entry No. 35 at 2; *see also* Docket Entry No. 37 at 10–11). Those defenses included Dr. Bynon's arguments "that he did not act 'willfully' (i.e., with knowledge that his conduct was illegal, which

3

it was not) when he admittedly used 'internal holds' (i.e., adjustments to donor acceptance criteria) and that he did not make any 'false' assertions of fact by adjusting the donor acceptance criteria." (Docket Entry No. 35 at 2; *see generally* Docket Entry No. 19).  Dr. Bynon also presented evidence that UNOS had issued guidance about using "such internal holds."  (Docket Entry No. 35 at 2).

In February 2026, Dr. Bynon pleaded not guilty to all counts in the indictment, and the judge set the trial for April 6, 2026.  (Docket Entry No. 13).  In March 2026, Dr. Bynon moved to continue the trial.  (Docket Entry No. 25).  He sought the continuance because the United States planned to complete a voluminous discovery production by March 13, which Dr. Bynon's counsel needed time to review.  (*Id.* at 1).  Dr. Bynon continued to assert that the trial "be conducted within seventy non-excludable days under the Speedy Trial Act."  (*Id.*).  The United States did not oppose the motion.  (*See id.*).  The court granted the motion, resetting the trial to June 22, 2026.  (Docket Entry No. 26).

On April 24, 2026, after conferring with the prosecution, Dr. Bynon moved to amend the scheduling order to reflect filing dates for pretrial motions and responses.  (Docket Entry No. 27). The court granted the motion.  (Docket Entry No. 28).  Dr. Bynon has moved to dismiss the case, to suppress evidence, and to strike specific allegations in the indictment.  (Docket Entry Nos. 29, 30, 33).  The United States has responded.  (Docket Entry Nos. 37–39).

On May 7, 2026, the United States moved to certify this case as complex and to continue the trial setting.  (Docket Entry No. 34).  Dr. Bynon has responded.  (Docket Entry No. 35).  The motion is ready for ruling.

## II.    The Legal Standard

The Sixth Amendment guarantees the "right to a speedy and public trial."  U.S. CONST. amend. VI.    "The *speedy* trial right protects the innocent man from prolonged de facto

4

punishment—extended accusations that limit his liberty and besmirch his good name—before he has had a fair chance to defend himself." Akhil Reed Amar, *Sixth Amendment First Principles*, 84 Geo. L.J. 641, 642 (1996). "If government accuses an innocent man and then refuses to suspend its accusation, it must give him the right, speedily, to clear himself at trial and regain his good name and full liberty." *Id.*

To implement the speedy-trial right, Congress passed, and the President signed, the Speedy Trial Act. *See United States v. Gonzalez–Rodriguez*, 621 F.3d 354, 368 (5th Cir. 2010) ("The Speedy Trial Act is designed to protect a criminal defendant's constitutional right to a speedy trial, and also to serve the public's interest in prompt criminal proceedings."). Under the Speedy Trial Act, "[i]f a defendant pleads not guilty, the trial 'shall commence' within 70 days 'from the filing date (and making public) of the information or indictment' or from the defendant's initial appearance, whichever is later." *Zedner v. United States*, 547 U.S. 489, 507–08 (2006) (emphasis omitted) (quoting 18 U.S.C. § 3161(c)(1)).

Courts may continue criminal trial settings to further the "ends of justice." 18 U.S.C. § 3161(h)(7)(A). A court may grant such a continuance "at the request of the attorney for the Government, if" the court finds "that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." *Id.*

The Act lists several factors that "a judge shall consider in determining whether to grant a continuance." *See id.* § 3161(h)(7)(B). One is whether "the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by" the Act. *Id.* § 3161(h)(7)(B)(ii). Another is whether refusing a continuance will deny "the attorney for the Government the reasonable time

5

necessary for effective preparation, taking into account the exercise of due diligence." *Id.* § 3161(h)(7)(B)(iv).

A decision to continue a trial setting under the Speedy Trial Act rests in the district court's sound "discretion," so long as it is exercised "within limits and subject to specific procedures." *Zedner*, 547 U.S. at 499. A district court's factual findings, such as its finding that a case is or is not "complex," is reviewed for "clear error." *United States v. Edelkind*, 525 F.3d 388, 397 (5th Cir. 2008) (quoting *United States v. Stephens*, 489 F.3d 647, 652 (5th Cir. 2007)).

### III.　Analysis

The United States argues that the court should continue the trial setting because the case is complex and because the prosecution needs additional time to prepare its trial presentation. (Docket Entry No. 34 at 5–9). The United States argues that it interviewed approximately 46 potential witnesses and reviewed over a terabyte of data, including 205,000 documents as well as messages and data from Dr. Bynon's cell phone. (*Id.* at 7). The United States also cites Dr. Bynon's motion to dismiss, claiming that it raised new arguments that will require the government to retain rebuttal medical experts. (*Id.* at 8). The United States concludes by raising logistical concerns about prosecuting the case during an international soccer tournament in Houston. (*Id.* at 10). For the following reasons, the court finds the United States's motion unpersuasive.

First, this is a single-defendant case with only five counts, each alleging a violation of 18 U.S.C. § 1035. *See United States v. Berganza Espina*, No. 4:19-CR-00228, 2021 WL 4943652, at *3 (E.D. Tex. Oct. 22, 2021) (collecting cases, which show that cases with few defendants and counts tend not to be complex). The statute is straightforward. It provides in relevant part:

> (a) Whoever, in any matter involving a health care benefit program, knowingly and willfully—

> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; or
>
> (2) makes any materially false, fictitious, or fraudulent statements or representations, or makes or uses any materially false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry,
>
> > in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 5 years, or both.

18 U.S.C. § 1035(a). To prove a violation of the statute, the United States must establish beyond a reasonable doubt: "(1) the defendant made a materially false, fictitious, or fraudulent statement or misrepresentation; (2) in connection with the delivery of [or payment for] health care benefits; and (3) he did so knowingly and willfully." *United States v. Dailey*, 868 F.3d 322, 330 (5th Cir. 2017) (alterations in original). The core of this case is whether Dr. Bynon made a false statement or falsified a material fact relating to the transplant donor criteria for his patients and, if so, whether he did so knowingly and willfully. These issues are not complex or difficult.

The case is further simplified because many of the relevant facts are not in dispute. Dr. Bynon does not dispute that he "adjusted donor acceptance criteria using UNet for the express purpose of having a donated liver not match the criteria for each of the five patients at certain points during his treatment of the patients." (Docket Entry No. 29 at 4; Docket Entry No. 35 at 2 (explaining that Dr. Bynon "admittedly used 'internal holds'")). Dr. Bynon seemingly does not dispute that his patient's donor criteria were literally false.[1] He does not appear to contend that his adult-aged patients needed the organs of a "small child." (Docket Entry No. 29 at 4).

---

[1] Dr. Bynon disputes that he made a statement or represented a fact that could be true or false as a matter of law. (*See* Docket Entry No. 29 at 10–13). The motion to dismiss remains under advisement. The court assumes for purposes of resolving this motion that the truth or falsity of Dr. Bynon's alleged statements is a triable factual issue.

Dr. Bynon instead argues that the donor criteria he entered, although literally false, were contextually true.  *See Thompson v. United States*, 604 U.S. 408, 419–20 (2025) (Alito, J., concurring) (discussing literal and contextual truth and falsity).[2]  According to Dr. Bynon, those in the transplant field or who know UNOS's policies would understand that his patients' donor-matching criteria created an internal (or informal) hold, which accurately communicated that his patients were temporarily not healthy enough to accept a transplant but did not, in context, communicate that his patients actually needed the organs of small children.  (*See* Docket Entry No. 29 at 8 (arguing that internal holds are a common medical practice)).  Given the undisputed facts, the disputed issues to be tried are straightforward: (1) did Dr. Bynon's patients' donor-matching criteria communicate the literal or contextual meaning; (2) if Dr. Bynon communicated the literal meaning, did he do so knowingly and willfully?  These issues do not present complicated medical questions that require detailed expert testimony or patient-specific minitrials.  (*See* Docket Entry No. 35 at 12 n.2 (quoting Docket Entry No. 29 at 4) (arguing that Dr. Bynon's motive—helping his patients based on his medical judgment—is not legally relevant under the statute and the government's theory)); *see also Norris v. United States*, No. 3:11-cv-1351-D, 2012 WL 1231804, at *2 (N.D. Tex. Apr. 12, 2012) ("[T]here will be instances in which testimony—although qualifying as opinion testimony that requires an expert report—is not so complicated that

---

[2] Consider a hypothetical.  After watching Lionel Messi score a go-ahead goal in the World Cup final, a reporter starts his game recap by stating that Messi had "ice in his veins."  Even though Messi did not in fact have "ice in his veins," making the reporter's lede literally false, no reasonable person would consider it false in context.  Reasonable readers would know the reporter was stating instead that Messi performed well under pressure.  This case presents a similar distinction between literal and contextual falsity.  To prove that Dr. Bynon made a false statement under the allegations in the indictment, the United States must prove that Dr. Bynon in fact conveyed the literal message that his adult-aged patients actually needed the organs of a small child.

it requires something extensive.").  The United States's assertion that the case is complex does not make it so.

Second, even assuming that the United States (and Dr. Bynon) must review a voluminous record and present complex medical evidence,[3] the court is not convinced that the prosecution's need for additional preparation time outweighs Dr. Bynon's right to a speedy trial.  *See* 18 U.S.C. § 3161(h)(7)(A).  The prosecution has had years to prepare.  Its investigation began in the spring of 2024, "when several key prosecution witnesses were first interviewed."  (Docket Entry No. 35 at 2).  National news began covering this case, and the federal government's investigation of it, around the same time.[4]  Nor are Dr. Bynon's defenses new.  The issue underlying Dr. Bynon's alleged "internal hold" practice—that "not every active candidate is ready for transplant when it's offered"—is one that transplant professionals have been confronting since well before the investigation into Dr. Bynon began.[5]  Commenters raised the internal-hold issue to the federal Health Resources & Services Administration in response to a fall 2025 policy proposal about

---

[3] Medical evidence may be relevant if the United States attempts to prove that Dr. Bynon falsely communicated the contextual meaning (that is, Dr. Bynon stated that his patients were not healthy enough to accept a transplant when they were in fact healthy enough to do so).  But the grand jury did not appear to indict Dr. Bynon on that theory.  And given that the United States claims it is only now necessary to retain medical experts for rebuttal, this theory of the case does not appear to be the theory the prosecution planned to pursue.  (*See* Docket Entry No. 34 at 8–9).  In addition, Dr. Bynon argues in his motion to dismiss that he cannot be held criminally liable for a bona fide medical judgment about his patients' ability to receive a transplant.  (*See* Docket Entry No. 29 at 15–18).  That issue in the motion to dismiss remains under advisement.

[4] *See* Brian M. Rosenthal & Jessica Silver-Greenberg, *Texas Surgeon Is Accused of Secretly Denying Liver Transplants*, N.Y. TIMES (Apr. 11, 2024), https://www.nytimes.com/2024/04/11/us/organ-transplants-houston.html.

[5] *See* Sara Moriarty, *Achieving A Shorter, More Active Kidney Waitlist*, UNOS: LIFE WITHOUT LIMITS (Feb. 7, 2019), https://perma.cc/7849-J7LJ ("They were listed as 'active' but we had them on internal hold."); *see also* UNOS, *COVID-19 Updates* (Apr. 7, 2020), https://perma.cc/VAK7-UBPG (directing doctors to place their transplant patients who contracted COVID-19 on an internal hold).

transplant waitlists, which was public while the prosecution was investigating Dr. Bynon.[6]  A reasonably diligent factual investigation would have revealed the ready explanation for Dr. Bynon's alleged false statements and should have led the United States to begin preparing to rebut it.

In addition, the United States was on notice of Dr. Bynon's specific theories in January 2026, two weeks after the grand jury returned the indictment against him.  (*See* Docket Entry No. 35 at 4; *see also* Docket Entry No. 37 at 10–11).  Dr. Bynon's counsel presented his defenses about "why [the] alleged 'internal holds' and donor-criteria adjustments are not false statements" and "how OPTN/UNOS guidance permits such practices."  (Docket Entry No. 35 at 5).  The United States had clear notice that Dr. Bynon was going to argue that his statements, though literally false, were contextually true.

The United States responds that it could not have anticipated that Dr. Bynon "would assert this defense as to every victim at the January 29, 2026[,] meeting because the victims were unknown to" him at the time.  (Docket Entry No. 37 at 11).  The court is not persuaded.  The United States cannot avoid its duty to prepare diligently for a speedy trial on the hope that Dr. Bynon would be unable to assert his primary defense once he learned the alleged victims' identities.  After receiving notice of Dr. Bynon's theory of the case (or even before bringing the indictment), the United States should have started to ensure that its theory of the case could survive the obvious defense that Dr. Bynon was acting in his patients' best interests.  The United States has had months (if not years) to rebut Dr. Bynon's explanation for why his statements were truthful

---

[6] *See Require Patient Notification for Waitlist Status Changes*, HEALTH RES. & SERVS. ADMIN. (Oct. 2025), https://perma.cc/A8KN-FCEL (listing public comments about the "use of informal 'internal hold' mechanisms").

or based on medical opinions, including by preparing expert witnesses to present rebuttal testimony.  The United States has not persuasively explained why yet more time is needed.

Throughout the pretrial proceedings, Dr. Bynon continued to argue his theory of the case and the medical-opinion defense that he had previewed.  At his initial appearance, Dr. Bynon raised "the fact that . . . numerous expert witnesses would likely be called."  (Docket Entry No. 35-2 at 20:11–14).  In April, Dr. Bynon sent a draft of his motion to dismiss to the prosecution a week before he filed it.  (*See* Docket Entry No. 35-1).  Dr. Bynon has been transparent and consistent in presenting his theory of the case.  There is no surprise or late-breaking complexity that warrants adjusting the scheduling order the parties agreed to and the court entered.  The court does not find that the United States exercised sufficient "diligence" to overcome Dr. Bynon's assertion of his right to a speedy trial.  *See* 18 U.S.C. §§ 3161(h)(7)(B)(iv), (h)(7)(C); *see also United States v. Hale*, 685 F.3d 522, 535 (5th Cir. 2012) (explaining that a lack of diligence precludes a continuance).

Third, the United States's logistical concerns based on the World Cup do not warrant a continuance.  In the motion to amend the scheduling order to the current trial date, Dr. Bynon asserted his speedy trial rights. (Docket Entry No. 27 at 1).  The United States did not oppose the motion.  The United States agreed to this trial date with full knowledge of the World Cup dates and the potential logistical travel and accommodation issues the event could create.  (*See* Docket Entry Nos. 27, 28; Docket Entry No. 35-1 at 2–3).  Both *Edelkin* and *Bieganowski*, on which the United States relies, are inapposite for that reason: they upheld continuances based on unforeseeable logistical problems, such as hurricanes or illnesses.  *See, e.g., United States v. Edelkind*, 525 F.3d 388, 397 (5th Cir. 2008) ("Louisiana courts were still recovering from Hurricanes Katrina and Rita."); *United States v. Bieganowski*, 313 F.3d 264, 284 (5th Cir. 2002)

11

(crediting "Dr. Bieganowski's illness and consequent inability to assist in his defense").  Although the United States argues that Houston accommodations and flights are more expensive than usual and its allotted per diem for trial, (*see* Docket Entry No. 34 at 3), these issues were foreseeable and are well within the ability of the United States Department of Justice and the United States Attorney's Office for the Southern District of Texas to manage.[7]  Neither issue overcomes the defendant's and the public's interest in a speedy trial.

## IV.   Conclusion

For these reasons, the United States's motion to certify the case as "complex" and to continue the trial date, (Docket Entry No. 34), is denied.

SIGNED on May 18, 2026, at Houston, Texas.

Lee H. Rosenthal
Senior United States District Judge

---

[7] The court notes that only four matches are scheduled to occur during trial.  *Match Schedule in Houston*, FIFA, https://www.fwc26houston.com/matches (last visited May 13, 2026).  They will occur on June 23, 26, and 29, and July 4.