**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **Case No. 4:26-cr-00023** |
| | § | |
| **JOHN STEVENSON BYNON, JR.** | § | |

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO HIS MOTION TO DISMISS THE SUPERSEDING INDICTMENT**

Dr. Steve Bynon submits this reply to the government's response in opposition (ECF No. 159) to his motion to dismiss the superseding indictment ("SSI").

## I. Introduction

Dr. Bynon has moved to dismiss the indictment on three alternative grounds: (1) the SSI does not allege facts that, even if true, satisfy the falsity element of 18 U.S.C. § 1035(a)(2); (2) the SSI does not allege facts that, even if true, satisfy the willfulness element of § 1035(a)(2); and (3) prosecuting Dr. Bynon on the theory the SSI actually asserts – i.e., that his internal holds departed from "institutional custom, accepted clinical practice, or legitimate exercise of the professional judgment and discretion ordinarily afforded to a similarly situated transplant physician," SSI ¶ 21 – violates due process because no statute or regulation provided fair notice that a transplant physician's modifying donor-acceptance criteria in order to prevent organ offers was against the law.

The government's response is limited to the first two grounds and ignores the third, except for a brief footnote that states that "[Dr.] Bynon also raises a due process challenge" and notes that this Court previously rejected such a challenge in its June 3, 2026 order denying Dr. Bynon's motion to dismiss the *original* indictment. Gov't Response, at 19 n.16. Although the motion to

dismiss the original indictment shares some of the same grounds as the current motion to dismiss the SSI, the due process arguments concerning the SSI differ significantly – in particular, in the focus on paragraph 21 of the SSI (which the government added in response to this Court's order that it provide a bill of particulars regarding the original indictment).

The government's falsity and willfulness arguments highlight the problems that the motion to dismiss the SSI identifies: this is a medical malpractice case that the government seeks to prosecute as five federal felonies. The government fails to identify any positive law (a specific statute or regulation) that Dr. Bynon is alleged to have willfully violated. Paragraph 21 of the SSI supplies a professional-negligence standard (i.e., whether Dr. Bynon's conduct comported with "accepted clinical practice" and what a "similarly situated transplant physician" would have done), and the precedent cited in the government's response fails to demonstrate that such a standard, even if Dr. Bynon violated it, put him on fair notice that he was acting unlawfully.

## II. The Government Fails Meaningfully to Address Dr. Bynon's Compelling Due Process Argument.

Dr. Bynon's motion to dismiss devoted 15 pages to the argument that prosecuting him under § 1035(a)(2) on the SSI's theory violates due process. In particular, the motion focused on: (1) the incontrovertible fact that the widespread practice of internal holds before April 2026 was not prohibited by UNOS, OPTN, or HRSA; (2) the theory of prosecution ultimately rests on a medical malpractice theory, using an objective reasonable-physician standard the Supreme Court rejected in *Ruan v. United States*, 597 U.S. 450, 457, 465 (2022), as a substitute for subjective *mens rea*; and (3) the government cannot identify any positive law (a specific statute or regulation) that gave Dr. Bynon fair notice that his internal holds, even assuming *arguendo* they involved false statements or entries, were unlawful. *See* Motion to Dismiss, at 19-33. Dr. Bynon also addressed the error in this Court's June 3, 2026 order – that a criminal statute with a scienter element is not

subject to a due process challenge under the void-for-vagueness doctrine – by citing contrary case law and also noting that the Supreme Court's void-for-vagueness doctrine is not solely based on a fair-notice rationale. *See id.* at 31-32. That doctrine also seeks to prevent arbitrariness by prosecutors and juries and to assure the separation of powers. A statute's scienter element has no relevance to those two rationales. *Id.*; *see also* Tr. of 8/18/2026 Hearing, at 22-28 & 129-38 (discussing *United States v. Briggs*, 939 F.2d 222, 225-28 (5th Cir. 1991)).

At the August 18th hearing, this Court noted its concern about the due process violation alleged in the motion to dismiss the superseding indictment (notwithstanding this Court's June 3, 2026 order denying the motion to dismiss the original indictment):

> THE COURT: … I don't read in the statute that you have alleged, in your … superseding indictment, that it required Dr. Bynon to inform patients or his colleagues when he has changed the donor criteria. It may have been professional misconduct. It may have been being a bad colleague. It may have … been malpractice, but it's not a crime ….
>
> MR. FRANKLYN: And, Your Honor, you are correct, and, again, that only goes to show, to the Court's concern, about the knowing and willfully component. The fact that he –
>
> THE COURT: That's kind of an essential element of the offense. …
>
> MR. KHALIL: Knowing that it's illegal, how do they know – knowing that it's illegal, we don't know if it was illegal because there's no statute that identifies that it was. So they are conflating *mens rea* with *actus re*[*us*].…
>
> THE COURT: No, I understand.
>
> MR. KHALIL: Criminal law 101, bad act and bad mind. There is no bad act here that's proscribed.
>
> THE COURT***: And it is made more confusing and makes the due process/adequate notice issue … more difficult given the government's blessing, during COVID, of a similar approach*** – it may not be identical, but similar use of adjustment of donor criteria to exclude offers for a particular patient or for a particular time.

Tr. of 8/18/2026 Hearing, at 85-87 (emphasis added).

The government does not engage those arguments. The factual showing made in the motion is unrebutted (and, indeed, incontrovertible): OPTN and UNOS gave their imprimatur to donor-criteria adjustments for the purpose of precluding organ offers – functionally equivalent to Dr. Bynon's internal holds – beginning in April 2020, and that guidance remained live on UNOS's own website long after the conduct charged in this case. Motion to Dismiss, at 4-10. Neither OPTN nor HRSA declared the practice "inappropriate" until April 3, 2026, more than two years after Dr. Bynon's last internal hold and years after the COVID-19 pandemic had ended. *Id.* at 5. HRSA has itself acknowledged in writing that it "is unaware of any guidance provided by the OPTN to members on the permissibility (or lack thereof) of ineffective listing practices post-pandemic." Mot. Exh. D, at 3. And when this Court ordered the government, through a bill of particulars, to identify the statute or regulation that Dr. Bynon willfully violated, the SSI's answer was paragraph 21 – a paragraph that cites an entire subpart of the Code of Federal Regulations, without identifying any provision that actually addresses donor-acceptance criteria.

The government's theory of prosecution, as this Court already has characterized it, illustrates why that omission matters. Early on, this Court observed that "this is a malpractice case, with a criminal consequence, as the Government has described it to me." Tr. of 6/8/2026 Hearing, at 25. The SSI has now made that characterization explicit: paragraph 21 alleges Dr. Bynon's criminal liability turns on whether his conduct complied with "institutional custom, accepted clinical practice, or legitimate exercise of the professional judgment and discretion ordinarily afforded to a similarly situated transplant physician" – the standard of care that a plaintiff would plead in a civil negligence action, not the positive-law violation due process requires before a criminal sanction attaches. *County of Suffolk v. First Am. Real Estate Solutions*, 261 F.3d 179, 195 (2d Cir. 2001) ("Due process requires that before a criminal sanction or

significant civil or administrative penalty attaches, an individual must have fair warning of the conduct prohibited by the statute or the regulation that makes such a sanction possible.").

The government already has conceded the three propositions on which this argument rests. At the August 18, 2026 hearing, government counsel stated without qualification:

> A regulatory mistake is not automatically a crime. We concede that. A policy violation is not automatically a crime. We concede that. A medical mistake is not automatically a crime. We concede that.

Tr. of 8/18/2026 Hearing, at 119. Those concessions are simply irreconcilable with a prosecution built on paragraph 21's standard-of-care theory.

This Court's comments from the bench at the same hearing make the due process problem concrete. Assessing the government's theory of prosecution, this Court observed:

> [W]e cannot allow this case to be tried as a medical malpractice case, as a bad manager case, as a I-didn't-tell-the-patient case, because none of that is criminal. … [T]here's no statutory or regulatory requirement that Dr. Bynon have informed the patients of this, quote, internal hold. It's not in the statute – it's not in the regulation. So the government is – it's kind of an Al Capone prosecution, if you will, using an unrelated statute that you can prove a violation of to get what you really want. … [T]here has to be – and this is what I'm struggling with – a specific intent to do something the law forbids, proof that the defendant knew that what he was doing violated the law, and I'm troubled.

Tr. of 8/18/2026 Hearing, at 43. The Court reiterated the point directly against the SSI's own charging theory:

> I don't read in the statute that you have alleged, in … [the] superseding indictment, that it required Dr. Bynon to inform patients or his colleagues when he has changed the donor criteria. … [I]t may have been malpractice, but it's not a crime – as you have alleged in the indictment, and that's my basic concern.

*Id.* at 85.

The Court also recognized that UNOS and OPTN's COVID-era guidance exacerbated the fair-notice problem. After defense counsel observed that "there is no bad act here that's proscribed" by any statute or regulation, this Court agreed that the absence of any identified

violation "is made more confusing and makes the due process/adequate notice issue … more difficult given the government's blessing, during COVID, of a similar approach – it may not be identical, but similar use of adjustment of donor criteria to exclude offers for a particular patient or for a particular time." Tr. of 8/18/2026 Hearing, at 87.

Footnote 16 of the government's response does not answer the motion. This Court's June 3, 2026 order addressed the original indictment, which contained no paragraph 21. Indeed, this Court granted a bill of particulars on August 11, 2026 precisely because the original indictment did not identify the specific statute or regulation on which the willfulness allegation rested. The government answered that order by superseding, and paragraph 21 is its answer. The due process question now presented is therefore not the question this Court decided in June: in June there was no articulated standard to test, and today there is one – a standard of care. A ruling that the original indictment did not rest on a "novel statutory construction" says nothing about whether paragraph 21's reasonable-physician test supplies the fair notice that due process requires. *See* Tr. of 8/18/2026 Hearing, at 11, 13-14 (defense counsel noting: "[n]ow they are explicitly pleading, essentially, a reasonable doctor case, and the 202[2] Supreme Court decision in *Ruan* … specifically prohibits that.").

The government's response addresses none of these issues. This Court should dismiss the SSI as a violation of due process.

### III. The Government Mischaracterizes the Rule 12(b)(3) Argument that Dr. Bynon Actually Makes.

The government contends that Dr. Bynon's motion to dismiss the SSI attempts to use a Rule 12(b)(3) motion as a vehicle to test the sufficiency of the government's evidence, and that this Court must take the SSI's allegations as true and require a jury to resolve the parties' factual disputes. Gov't Response, at 18-21 (citing, *inter alia*, *United States v. Flores*, 404 F.3d 320, 324–

25 & n.6 (5th Cir. 2005)). The government misrepresents Dr. Bynon's motion to dismiss. He does not ask the Court to weigh evidence or otherwise invade the province of a jury. Instead, he asks this Court to accept paragraph 21's allegations as true and hold that they do not identify any ascertainable statute or regulation Dr. Bynon willfully violated and, therefore, do not satisfy § 1035(a)(2)'s falsity and willfulness elements ***as a matter of law***. That is a legal ground that a Rule 12(b)(3) motion properly raises.

## IV. The Government's Falsity Theory Fails as a Matter of Law.

In addition to its conspicuous silence concerning the due process claim, the government's response to the motion to dismiss asserts a falsity theory that this Court already has rejected.

### A. The Court Has Already Recognized that No Statute or Regulation Required Dr. Bynon to Disclose His Internal Holds.

The government's falsity theory is that Dr. Bynon "made [the donor criteria adjustments] in secret and [failed to disclose them] to the patients' medical care team." Gov't Response, at 1; *see also id.* at 16 ("[Dr.] Bynon informed no one of this modification."); *id.* at 22 (contending that the internal holds were made "in a manner that circumvented notification policies"). The government quotes 42 C.F.R. § 482.94's notification requirements in full, *id*. at 10-11; the OPTN ten-business-day rule, *id.* at 15; and the hospital's notification policy, *id.* at 15 n.14, in support of its theory.

This Court has already dispatched that theory of falsity. At the August 18, 2026 hearing, this Court stated:

> The regulation [42 C.F.R. § 482.94] requires notification when a patient is placed on a waitlist, decision not to place the patient on a waitlist, the program's inability to make a determination about whether to put the patient on the waitlist, and if the patient is removed. Status 7 inactivations, internal holds are not within the listed categories. So as a matter of law, Dr. Bynon didn't violate it.

Tr. of 8/18/2026 Hearing, at 121; *see also id.* at 123 ("Even if the regulation is part of the policy, the regulation didn't require Dr. Bynon to notify patients of an internal hold. … That doesn't cover it."). And this Court noted that HRSA "has proposed changes to require that disclosure because it's not required under the current language" – confirming that the purported duty the government invokes does not exist even today. *Id.* at 124.

The government does not address these statements, and it rests its falsity theory on the same foundation about which this Court expressed serious doubt.

This Court should dismiss the superseding indictment because the government's theory of § 1035(a)(2)'s falsity element fails as a matter of law.

**B. The Government's Position That Dr. Bynon "Misrepresented" the MRB's Decision Is Not a Viable Criminal Theory.**

At the August 18th hearing, counsel for the government argued that Dr. Bynon's internal holds "literally misrepresent[ed] the MRB's decision." Tr. of 8/18/2026 Hearing, at 93. When counsel for the government contended that "our whole argument has been the fact that when was inputted did not reflect the decision of the MRB," this Court responded that, "[b]ut that's not a crime." *Id.* at 99-100. This Court also stated that, rather than "misrepresenting" the MRB's decision:

> [Dr. Bynon was] overriding the MRB's decision. … [b]y submitting a statement that he won't take a liver that could be put in that patient. … [H]e may have violated the hospital's policies and procedures six ways to Sunday. That is not a crime. That's not the crime alleged.

*Id.* at 93-94. This Court asked the government to identify where in the evidence Dr. Bynon represented that a donor-criteria adjustment "represented … the MRB's decision," and the government did not have an answer other than to point to UNOS's "Terms of Use." *Id.* at 100. (That argument will be discussed *infra.*)

The government's response returns to the same characterization: "[Dr.] Bynon misrepresented the decision of the MRB when he falsely stated on UNet that his patients needed organs from donors of unrealistic age and weight criteria." Gov't Response at 18; *see also id.* at 6 ("*Essentially*, he misrepresented the MRB's decision regarding transplant eligibility by restricting donor criteria to such a degree that these patients received no offers.") (emphasis added). Overriding the MRB's recommendation – which the governing policies permitted a treating physician to do, *see infra* – is not a false statement about what the MRB decided.

**C. UNOS's "Terms of Use" Further Undermine the Government's Theory.**

At the August 18th hearing, UNOS's "Terms of Use" were the government's sole answer to the Court's question concerning where the supposed representation about the committee's decision could be found. Tr. of 8/18/2026 Hearing, at 100, 109. This Court stated that:

> That doesn't say anything about the committee. … I don't see anything about having to – that there's a representation by Dr. Bynon of his criteria adjustment that they are based on the committee's assessment. … [H]is adjustment of the criteria doesn't itself say, ["]This is the committee's decision,["] or, ["]This was agreed to by every doctor who reviewed it,["] or anything to that effect.

*Id.* at 110-11. This Court asked directly: "And you're going to hang criminal liability on that? … And violating UNOS terms of use, not a crime." *Id.* at 101-02.

The government focuses on the same clause, *see* Gov't Response, at 12, and asserts in a footnote that "[t]he UNOS terms of use do, in fact, require users to enter accurate information based on corresponding medical records[.]" *Id.* at 12 n.11. But the quoted clause ***is disjunctive***: data must be based on "medical records and other source documents, ***or*** where appropriate, are based upon clinical observation." *Id.* at 12 (emphasis added). The government's response relies on the very language that this Court already has stated does not support the falsity element.

### D. The Court Has Observed that Excluding Donors Based on Age or Weight Criteria Is Not a "False" Statement.

The government disputes Dr. Bynon's contention that his internal holds were not false statements because they merely recorded his directions to UNOS about the types of organs that he would accept for his patients and, thus, did not misdescribe anything.[1] At the August 18th hearing, this Court stated:

> If Dr. Bynon intended to exclude offers from donors of an appropriate age and weight criteria, if he intended to exclude them for whatever medical reason, it's not a false statement because what he's saying is, "I truly don't want donors with organs that I can use" – and that's – that's not false.

Tr. of 8/18/2026 Hearing, at 107.

This Court also stated: "here's my problem, and we're going around in circles on this: False – if Dr. Bynon's statements were, 'I don't want an organ offered,' that would be acceptable. Given proper donor criteria, it's not false. He didn't want a liver for the patient at that point. It's not false, and that's my concern." Tr. of 8/18/2026 Hearing, at 92. This Court further opined: "Fine, he knew that the criteria that he was stating were not the criteria that were acceptable, but if he intended them to be exclusionary, it wasn't false. And if the statement would have conveyed to Medicare, to doctors, to UNOS, OPTN, 'I don't want a liver right now that my patient could

---

[1] The motion to dismiss argues:

> The superseding indictment does not allege that any UNet entry by Dr. Bynon misdescribed anything. It alleges that Dr. Bynon "intentionally took deliberate action to change the patient's donor-acceptance" parameters and that "[t]he new parameters intentionally placed by [Dr. Bynon] were so restrictive that suitable donors would be screened out." SSI ¶ 20. Both propositions are true, and the record of them is accurate: the parameters recorded in UNet were the parameters that Dr. Bynon in fact set. A record that faithfully reports what a physician directed is not a false writing; it is a true one. The government's quarrel is with the clinical decision that the record accurately memorializes, not with the record.

Motion to Dismiss, at 17.

accept,' it's true. It's true." *Id.* at 70. This Court then stated: "[T]hat's what is so puzzling about this case as a criminal prosecution, not as a malpractice case … not as a licensing matter." *Id.* at 70-71.

The Court separately rejected the premise that an adjustment of donor acceptance criteria can be false merely because it reflects a medically debatable judgment, distinguishing a false statement from a medically incorrect one:

> [W]hat I see being conflated is a false statement with a medically incorrect statement. So, I mean, the donor acceptance criteria of the wildly obese child as – if the statement is, ["]This is an appropriate donor for my patient,["] that's false, but is that the statement? … Is it a statement about it being medically appropriate for that patient? I don't – show me where that is.

Tr. of 8/18/2026 Hearing, at 96-97. Counsel for the government could not identify any such statement. *Id.* at 97.[2]

---

[2] The exchange thereafter was as follows:

> THE COURT: And that's – and he's saying, ["]This is what I would accept,["] and there's no – the likelihood of that need being met is very small, and he knows that.
>
> MR. FRANKLYN: But, Your Honor, that's what I'm saying. That's very different than I won't accept anything, and so that's what we keep going back-and-forth on, is on one hand he's saying, I would accept nothing because I want nothing, and then to your – the Court's point that you just raised is, I would accept this. And so that's exactly what Mr. Kinchen is –
>
> THE COURT: No, no, no. I think that – I think what your focus is, that that was medically incorrect. Does that mean – but it was not false, and that's the –
>
> ** *
>
> THE COURT: I think that's the argument that the defense is making. It may have been a medically incorrect statement of need, but it was a factually accurate statement that, in fact, Dr. Bynon, at the time, did not want an offered organ for that patient. … That's what I'm struggling with here.

Tr. of 8/18/2026 Hearing, at 97-98.

Rather than acknowledge and address this Court's statements about lack of falsity, the government argues that "[t]his proposition misconstrues the law" about whether a medical opinion can be false. Gov't Response, at 19. The government asserts "[c]ourts have routinely recognized that clinical judgments can be false statements." *Id.* The government relies primarily on *United States v. Mesquias*, 29 F.4th 276 (5th Cir. 2022), for the proposition that "health care providers cannot immunize themselves from prosecution by cloaking fraud with a doctor's note." Gov't Response, at 21 (quoting *Mesquias*, 29 F.4th at 282).

*Mesquias* involved a scheme to certify patients as eligible for hospice and home-health services against Medicare's own written eligibility criteria – ***an ascertainable regulatory standard against which a jury could measure whether the certifying physician's stated clinical judgment was true or false***. 29 F.4th at 279. The same is true of the other Fifth Circuit cases that the government cites for the same proposition: *United States v. Patel*, 485 Fed. App'x 702, 709 (5th Cir. 2012); *United States v. Hamilton*, 37 F.4th 246, 260 (5th Cir. 2022); *United States v. Veasey*, 843 F. App'x 555 (5th Cir. 2021); and *United States v. Sanjar*, 876 F.3d 725 (5th Cir. 2017). Gov't Response, at 19-22.

Dr. Bynon's case is clearly distinguishable. The SSI does not allege that Dr. Bynon's internal holds violated any ascertainable eligibility criterion comparable to the rules in *Mesquias*, *Hamilton*, *Patel*, *Veasey*, or *Sanjar*. To the contrary, paragraph 21 of the SSI affirmatively concedes that "the governing policies permitted clinical judgment or professional leeway," and frames the offense as using that discretion in a way the government now says was undisclosed and unauthorized – ***not as a violation of any statute or regulation***. A prosecution built on the government's *post hoc* view of how a physician should have exercised discretion is not legally viable under Fifth Circuit precedent such as *Mesquias*. "Cloaking fraud with a doctor's note" is a

catchy phrase, but it has no application here because there was no specific statute or regulation prohibiting Dr. Bynon's internal holds. Neither the SSI nor the government's response has identified one.

### E. The Response's Own Exhibits Demonstrate that No Ascertainable Standard Existed for Dr. Bynon to Depart From.

The government's response attaches, as Exhibit A, the hospital's patient-selection criteria it offers as the standard under 42 C.F.R. § 482.90.[3] *See* Gov't Response, at 9 n.9. Its preface states: "Although they address the most frequent problems encountered in our patients***, these guidelines are not intended to replace good physician judgment*** and they are not rigid. Therefore, ***they may be modified according to the patient's status and specific needs***." Exh. A, at 1 (emphasis added). That is, the criteria may be modified according to clinical judgment, which is the opposite of the ascertainable, non-discretionary standard that § 1035(a)(2) requires before criminal liability can attach. Moreover, those guidelines concern ***patient***-selection criteria – not ***donor***-acceptance criteria. It is undisputed that Dr. Bynon's internal holds related solely to the latter.

Exhibit B, the hospital's "Recipient and Wait List Management Procedure," tracks 42 C.F.R. § 482.94 by tying the transplant coordinator's notification duty to MRB action, status changes, and removals – the same three categories this Court already has held, based on § 482.94 itself, do not prohibit internal holds. Tellingly, the MRB form reproduced in the government's response – according to the government, "the form used by the MRB to memorialize its decision regarding [patients'] eligibility for a liver transplant," Gov't Response, at 14 – addresses only

[3] That regulation provides in relevant part: "The transplant program must use written patient selection criteria in determining a patient's suitability for placement on the waiting list or a patient's suitability for transplantation." 42 C.F.R. § 482.90.

eligibility, not donor criteria. The government's own exhibit confirms what paragraph 21 of SSI effectively concedes: there was no ascertainable, documented legal standard governing donor-acceptance criteria for Dr. Bynon to knowingly depart from when he placed the internal holds.

### V. The Government's Willfulness Theory Fails as a Matter of Law.

#### A. The Government's Response Does Not Address the Defect in SSI ¶ 21 and, Instead, Rests on an Untenable Syllogism.

The government contends that "[i]t is unclear what Bynon is referring to when he cites 'positive law,'" and then argues that 18 U.S.C. § 1035(a)(2) itself is positive law because Congress enacted it. Gov't Response, at 23-24. That argument fails to address the point stated plainly on page 27 of the motion to dismiss: ***the standard the SSI uses to satisfy § 1035(a)(2)*** – "institutional custom, accepted clinical practice, or legitimate exercise of the professional judgment and discretion ordinarily afforded to a similarly situated transplant physician," SSI ¶ 21 – is not embodied in any statute or regulation that Dr. Bynon (or anyone else) could have known and willfully violated. A person can know that § 1035(a)(2) exists and still lack fair notice that a certain false statement made in the healthcare context is proscribed by it. A false statement by a medical professional cannot violate § 1035(a)(2) if the medical professional's statement is deemed false only according to some undefined standard rather than by a clearly ascertainable statute or regulation. The government's syllogism (i.e., § 1035(a)(2) is positive law – ergo, the willfulness element has been sufficiently pleaded) does not identify such a clearly ascertainable statute or regulation. That is because there is none.

#### B. The SSI Fails to Allege Willfulness Under the Three-Tiered Framework.

The government cites *United States v. Kay*, 513 F.3d 432, 447-48 (5th Cir. 2007), for the proposition that § 1035(a)(2) requires only the "intermediate" of the three tiers of willfulness, i.e., knowledge that one's conduct was "in some general sense" unlawful, without knowledge of the

specific statute. Gov't Response, at 24-25. Yet the government still has not explained how Dr. Bynon could have known, even in any general sense, that internal holds were unlawful when (1) UNOS and OPTN affirmatively recommended functionally identical donor-criteria adjustments in April 2020 and did not withdraw that guidance until April 2026; and (2) the SSI's own paragraph 21 concedes that the "governing policies permitted clinical judgment or professional leeway" in this area. A defendant cannot willfully violate, even at the "in some general sense" tier, a legal standard that the charging instrument itself describes as discretionary. The government's argument collapses because it ultimately is trying to prosecute a medical malpractice action as a federal felony.

The government's response fails to address *Ruan v. United States*, 597 U.S. 450 (2022), although the motion to dismiss placed it at the center of the willfulness argument. *Ruan* held that where a statute makes authorized conduct lawful and unauthorized conduct criminal, the government must prove subjectively that the defendant knew he was acting in an unauthorized manner, and it rejected an objective "hypothetical reasonable doctor" standard as a substitute for that showing. *Id*. at 457, 465. Paragraph 21 asks a jury to measure Dr. Bynon against "accepted clinical practice" and against what a "similarly situated transplant physician" would have done. That is the objective standard *Ruan* forbids, applied to a physician exercising professional judgment under a statute that requires proof he acted willfully (i.e., knowing that his conduct was unlawful).[4] The government has now had the opportunity to explain why *Ruan* does not control and has made no attempt to do so.

---

[4] *See* Fifth Circuit Pattern Jury Instructions (Criminal Cases) §§1.43 & 2.50 (2024); *see also* Gov't Resp. in Opp. to Def.'s Mot. in Limine Regarding 42 C.F.R. § 482.94, ECF No. 108, at 5 ("In order to establish a willful violation of a statute, the Government must prove that the defendant acted with knowledge that his conduct was unlawful.") (citing *Bryan v. United States*, 525 U.S. 184, 191-92 (1998); *Ratzlaf v. United States*, 510 U.S. 135, 137 (1994); and Instruction 1.43).)

### C. The Government's Circumstantial-Evidence Argument Is a Trial Argument, Not a Response to the SSI's Pleading and Fair-Notice Defects.

The government argues that Dr. Bynon's expertise as a transplant surgeon and his alleged use of internal holds "in secret" rather than done "transparently" permit a jury to infer willfulness circumstantially. *See* Gov't Response, at 26 (citing *United States v. Henderson*, 893 F.3d 1338 (11th Cir. 2018), and *United States v. Reed*, 710 F.3d 219 (5th Cir. 2012)). Whether the evidence at a trial will support such an inference is not before the Court on this motion, and Dr. Bynon does not ask the Court to resolve it now. But an argument about what a jury might infer from disputed trial evidence cannot answer the antecedent legal question that the motion to dismiss raises: whether paragraph 21 of the SSI, ***accepted as true***, identifies any statute or regulation capable of being willfully violated in the first place. If it does not (and the government never says what the statute or regulation is), then no amount of circumstantial evidence about Dr. Bynon's state of mind can supply the missing element, because "willfulness" under § 1035(a)(2) requires proof that a defendant knew his conduct was unlawful, not merely that he acted deliberately or non-transparently. As this Court stated at the August 18th hearing, the government's theory that Dr. Bynon acted willfully by failing to disclose his internal holds to his patients and colleagues – his "failure to communicate" – "was a great line from *Cool Hand Luke*, but that's not the basis of a criminal prosecution." Tr. of 8/18/2026 Hearing, at 71.

### D. The Government's Response Ignores the Charging Paragraph's Failure to Incorporate SSI ¶ 21.

Finally, the government's response entirely fails to address yet another problem identified in the motion to dismiss: the SSI's charging paragraph for Counts One through Five, SSI ¶ 22, incorporates only "Paragraphs 1 through 20" of the SSI but not paragraph 21, which is the paragraph containing the government's sole articulation of the legal standard by which Dr.

Bynon's conduct is measured ("institutional custom, accepted clinical practice," etc.). Because paragraph 21 is not incorporated into the charging paragraphs for Counts One through Five, the government's willfulness theory, on the SSI's own terms, fails as a matter of law. The government's response to the motion's arguments about falsity and willfulness pivot on paragraph 21's language, without so much as an acknowledgment that paragraph 21 is not incorporated in the essential charging paragraph.

## CONCLUSION

For the foregoing reasons, and also for the reasons set forth in Dr. Bynon's motion to dismiss (and in his motion to dismiss the original indictment), this Court should dismiss the SSI. If it would be helpful to the Court, undersigned counsel are available for oral argument.

Respectfully submitted,

/s/ *Samy Khalil*
Samy Khalil
Texas Bar No. 24038997
John Kinchen
Texas Bar No. 00791027
**KHALIL KINCHEN LLP**
4200 Montrose Blvd., Suite 440
Houston, Texas 77006
713.904.4477
samy@khalilkinchen.com
john@khalilkinchen.com

Brent Evan Newton
Attorney at Law
Texas Bar No. 00788115
19 Treworthy Road
Gaithersburg, Maryland 20878
202.975.9105
brentevannewton@gmail.com

*Attorneys for Dr. Steve Bynon*

## CERTIFICATE OF SERVICE

On September 9, 2026, I electronically filed this reply with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

/s/ *Samy Khalil*
Samy Khalil