United States District Court
Southern District of Texas
**ENTERED**
September 10, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CRIMINAL ACTION NO. H-26-23 |
| | § | |
| JOHN STEVENSON BYNON, JR., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

A grand jury returned a superseding indictment against Dr. John Stevenson Bynon, Jr., an experienced liver transplant surgeon, for making false statements in connection with a health-care benefit program, in violation of 18 U.S.C. § 1035. (Docket Entry No. 128). The government alleges that Dr. Bynon falsely stated on the United Network of Organ Sharing's donor-matching system that his patients needed organs from donors of unrealistic age and weight criteria, for example, by stating that his adult patients needed organs from donors whose age and weight criteria would be met only by small, obese children. (*See id.* ¶¶ 12–19; Docket Entry No. 135). The government alleges that Dr. Bynon's false statements about the donor-matching criteria made his patients "either severely restricted or functionally ineligible to receive a donor organ offer," (Docket Entry No. 128 ¶ 12), while their criteria were adjusted.

The government alleges that Dr. Bynon "knew the patients . . . had been approved/listed for liver transplantation" and "intentionally placed" "new parameters" that were "so restrictive that suitable donors would be screened out." (*Id.* ¶ 20). The government alleges that Dr. "Bynon's actions were not undertaken pursuant to, or in good-faith compliance with, an[] identified transplant policy" of several named institutions and that his actions "did not follow institutional

custom, accepted clinical practice, or legitimate exercise of the professional judgment and discretion ordinarily afforded to a similarly situated transplant physician." (*Id.* ¶ 21).

Dr. Bynon moved to dismiss the superseding indictment. (Docket Entry No. 135). He asserts several grounds, including due process violations. (*Id.*). The government opposed the motion to dismiss at the August 18, 2026, motion hearing, (Docket Entry Nos. 146, 157), and submitted its written response, (Docket Entry No. 159). Based on the motion, the response, the reply, a careful review of the record, the applicable law, the reasons set forth in the memorandum and opinion denying the earlier motion to dismiss, (Docket Entry No. 62), and with the benefit of oral argument, (Docket Entry Nos. 146, 157), the motion to dismiss, (Docket Entry No. 135), is denied. The reasons for this ruling are set forth in detail below.

## I. Background

In 1984, Congress passed the National Organ Transplant Act, establishing the Organ Procurement and Transplant Network. (Docket Entry No. 128 ¶ 5). Congress directed the Transplant Network to maintain a national registry for organ matching and to contract with a private organization to operate the network. (*Id.*). The Transplant Network awarded the contract to the United Network of Organ Sharing ("UNOS"), which has operated the national registry since its inception. (*Id.*). UNOS is "responsible for managing the national transplant waiting list, matching potential transplant donors and recipients, maintaining the database that contains all organ transplant data for every transplant that occurs in the United States, [and] ensuring that patients receive a fair chance at receiving organ[s] they need without regard for age, sex, ethnicity, religion, [or] financial/social status . . . ." (*Id.* ¶ 6).

UNOS created UNet, a technological platform to help match organ donors and potential recipients. (*Id.* ¶ 7). UNet includes a "Waitlist" identifying individuals in need of organ

transplants; a "DonorNet" identifying organ donors; a "TransNet" designed to match donors and recipients correctly and efficiently; and other technologies, such as the Transplant Information Electronic Data Interchange, to help find compatible matches between donors and transplant recipients. (*Id.*).

UNet's matching system relies on patient medical data. (*Id.* ¶ 8). UNet's matching system includes facts about a patient's immunological system and "donor matching criteria," such as the size and weight of an acceptable donor for that patient. (*Id.*). "These parameters contribute to the ability of the transplant recipient to be matched with a transplant donor and therefore the likelihood of a successful transplant." (*Id.*).

John Stevenson Bynon, Jr., is a Houston physician licensed to practice medicine in Texas. (*Id.* ¶ 10). Dr. Bynon was the Director of Abdominal Organ Transplantation and the Surgical Director for Liver Transplantation of Memorial Hermann Health System's Texas Medical Center. (*Id.*). He served as the Texas Medical Center's primary surgeon for the liver program in the Transplant Network. (*Id.*).

The government alleges that Dr. Bynon "entered false donor matching criteria" in five patients' "medical records within UNet." (*Id.* ¶ 12; *see also id.* ¶¶ 13, 15, 17, 19). The government alleges that by entering false donor-matching criteria, Dr. Bynon made his patients "either severely restricted or functionally ineligible to receive a donor organ offer" through UNet's matching system. (*Id.* ¶ 12; *see also id.* ¶¶ 13, 15, 17, 19).

A grand jury indicted Dr. Bynon for five counts of making false statements relating to health-care matters, in violation of 18 U.S.C. § 1035, as shown in the following table:

| Count | Date | Patient | Description | Nature of Falsity |
|---|---|---|---|---|
| 1 | March 22, 2023 - February 14, 2024 | C.C. | Medical Record | Donor matching criteria |
| 2 | February 13, 2024 – March 23, 2024 | A.P. | Medical Record | Donor matching criteria |
| 3 | February 10, 2023 – December 22, 2023 | R.O. | Medical Record | Donor matching criteria |
| 4 | April 25, 2023 – March 26, 2024 | P.P. | Medical Record | Donor matching criteria |
| 5 | December 23, 2023 – December 24, 2023 | O.F. | Medical Record | Donor matching criteria |

(*Id.* at 9).

The government alleges that "[t]here was no documented change in the patient's condition supporting the newly restrictive criteria" and that Dr. Bynon did "not disclose[]" the adjusted criteria "to the patients, transplant committee, or other people who reasonably would have expected to know about it." (*Id.* ¶ 20). The government alleges that "[t]he absence of documented clinical justification, the departure from established procedures, the failure to obtain or seek appropriate review, the lack of transparency to fellow physicians, staff and patients, and the secretive nature of Bynon's material alterations capable of eliminating transplant offers are circumstances supporting a reasonable inference that the false statements . . . were created intentionally and deliberately and materially influenced the opportunity for a liver transplant. (*Id.* ¶ 21).

The present issue is whether to grant the motion to dismiss the superseding indictment before the trial. (Docket Entry No. 135).

## II. The Legal Standard

### A. The Motion to Dismiss

A criminal defendant may move to dismiss based on a "defect in the indictment," such as a "failure to state an offense." FED. R. CRIM. P. 12(b)(3)(B)(v). Generally, "[i]n deciding a motion to dismiss, the court must accept the allegations in the indictment as true and determine whether

the defendant is entitled to the requested relief as a matter of law." *United States v. Cuellar*, 800 F. Supp. 3d 716, 727 (S.D. Tex. 2025) (citing *United States v. Mann*, 517 F.2d 259, 266–67 (5th Cir. 1975)). A "district court may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motions so long as the court's findings on the motion do not invade the province of the ultimate finder of fact." *United States v. Flores*, 404 F.3d 320, 324 n.6 (5th Cir. 2005) (quoting *United States v. Shortt Acct. Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986)). This "approach avoids the waste of judicial resources that results from 'legally meritless cases being sent to trial.'" *Id.* at 325 (quoting *United States v. Salman*, 378 F.3d 1266, 1269 (11th Cir. 2004)). A legal defense is ready for ruling on a motion to dismiss "if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." *Id.* (quoting *United States v. Covington*, 395 U.S. 57, 60 (1969)).

## III. Analysis

The government alleges that Dr. Bynon's false statements about the donor criteria for the five patients at issue violated 18 U.S.C. § 1035(a). (Docket Entry No. 128). That statute provides:

> (a) Whoever, in any matter involving a health care benefit program, knowingly and willfully—
>
> > (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; or
> >
> > (2) makes any materially false, fictitious, or fraudulent statements or representations, or makes or uses any materially false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry,
> >
> > > in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 5 years, or both.

18 U.S.C. § 1035(a). To prove a § 1035(a) violation, the government must prove beyond a reasonable doubt that: "(1) the defendant made a materially false, fictitious, or fraudulent statement

or misrepresentation; (2) in connection with the delivery of [or payment for] health care benefits; and (3) he did so knowingly and willfully." *United States v. Dailey*, 868 F.3d 322, 330 (5th Cir. 2017) (alterations in original).

Dr. Bynon argues that the motion to dismiss "is limited to two issues: (1) whether the [superseding indictment] states a viable offense; and (2) whether the [superseding indictment] should be dismissed under the void-for-vagueness doctrine." (Docket Entry No. 135 at 3). He claims he "does not re-urge . . . any other arguments this Court previously resolved as matters of law," and "addresses only the grounds . . . created by the government's post-order disclosures and other developments, and the grounds supplied by the superseding indictment itself." (*Id.*).

The court reiterates the reasons set forth in the memorandum and opinion denying the earlier motion to dismiss, (Docket Entry No. 62), and holds that the superseding indictment—which adds two paragraphs to the original indictment—survives the motion to dismiss.

**A. Superseding Indictment**

Dr. Bynon contends that he entered the donor criteria to put the five patients at issue on an "internal hold" to delay donor organ offers until his patients were able to withstand the transplant procedures without removing them from the list of those in need of a liver transplant and without the patients losing credit for the time they had spent on the list. He contends that such "internal holds" were not prohibited by UNOS, OPTN, and HRSA before April 2026, and that such holds were widespread. (Docket Entry No. 135 at 4–10). He points out that the superseding indictment's additional paragraphs do not identify a statute or specific regulation that he allegedly violated. (*Id.* at 10-11; Docket Entry No. 128 ¶¶ 20–21).

Dr. Bynon's argument does not justify pretrial dismissal. The government disputes Dr. Bynon's characterizations of internal holds as a recognized way to coordinate a patient's ability to

successfully undergo transplant surgery. (*See generally* Docket Entry No. 128; Docket Entry No. 159 at 7, 22, 26). The government also disputes that he sincerely believed that the five patients could not withstand the surgery during the time he used false donor criteria to forestall donor offers. (*See generally* Docket Entry Nos. 128, 159). Such "fact questions raised by an [i]ndictment are the province of the jury." *See United States v. Williams*, 701 F. Supp. 3d 257, 263 (S.D.N.Y. 2023) ("[T]he sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment." (quoting *United States v. Corbin*, 729 F. Supp. 2d 607, 611 (S.D.N.Y. 2010))). After all, "a court may not grant a motion to dismiss 'on the ground that the allegations are not supported by adequate evidence, for an indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for trial of the charge on the merits.'" *United States v. Burger*, 170 F.4th 395, 403 (5th Cir. 2026) (per curiam) (citing, *inter alia*, *Mann*, 517 F.2d at 267).

Second, the statute—18 U.S.C. § 1035(a)—does not mandate that the government affirmatively identify a specific violation of an additional statute or regulation. *See U.S. Postal Serv. v. Konan*, 607 U.S. 391, 406 (2026) ("[A] legislature says in a statute what it means and means in a statute what it says there." (quoting *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992))). Dr. Bynon provides little authority to support his argument that the government must identify a concrete violation of an additional statute or a regulation to prove a § 1035(a) violation. (*See generally* Docket Entry No. 135 at 10–12).

**1. Falsity**

Dr. Bynon argues that the superseding indictment does not allege a viable falsity element, in part because Dr. Bynon's internal holds – his adjustments of the five patients' donor acceptance criteria to temporarily preclude organ offers – "are not false assertions of fact." (*Id.* at 13). He

argues that in context, his statements were clear and true statements that these patients were not at the time able to accept appropriate donor organs. (*See* Docket Entry No. 135). At this stage, there are two problems with that argument. First, "if UNOS requires doctors to set donor-acceptance criteria that accurately reflect their patients' medical needs, then Dr. Bynon's inaccurate donor-acceptance criteria for specific patients, which allegedly sought child donors, could be a false statement about those patients, all of whom were adults." *United States v. Bynon*, No. CR H-26-23, 2026 WL 1595296, at *6 (S.D. Tex. June 3, 2026) (footnote omitted). Second, the government disputes that Dr. Bynon sincerely believed that the patients were unable to accept donor organs. (*See generally* Docket Entry Nos. 128, 159). These factual disputes cannot properly be resolved pretrial.

**2. Willfulness**

Dr. Bynon argues that the superseding indictment fails to allege a viable willfulness element. (Docket Entry No. 135 at 17–19). The Fifth Circuit Pattern Jury Instructions describe willfulness as an "act . . . committed voluntarily and purposely with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law." *Fifth Circuit Pattern Jury Instructions (Criminal Cases)* 1.43 at 70 (2024) (quoting *United States v. Ricard*, 922 F.3d 639, 648 (5th Cir. 2019)). The cases make clear that "willfulness is an 'evidentiary question' that should not be determined in a Rule 12(b) proceeding.'" *Burger*, 170 F.4th at 404 (reversing the district court's dismissal of the indictment) (citing *United States v. Knox*, 396 U.S. 77, 83 n.7 (1969)); *accord Thibodeau v. United States*, 828 F.2d 1499, 1505 (11th Cir. 1987) ("The willfulness determination is generally reserved for the jury."). The government agrees that it cannot secure a conviction without proving beyond a reasonable doubt that Dr. Bynon acted willfully—that is, "with knowledge that his . . . conduct violated the law." *See Fifth Circuit*

*Pattern Jury Instructions (Criminal Cases)* 1.43 at 68 (2024) (citing *Ratzlaf v. United States*, 510 U.S. 135, 141 (1994)); (Docket Entry No. 159 at 25). The government agrees that it cannot prove the offense it alleges by proof that Dr. Bynon committed medical malpractice, a state-law tort, or that he is strictly liable for literally false statements. (*See* Docket Entry No. 157). The parties vigorously dispute whether Dr. Bynon acted willfully. (*Compare* Docket Entry No. 135, *with* Docket Entry No. 159). Whether the government can prove willfulness beyond a reasonable doubt cannot properly be determined on a pretrial motion to dismiss the indictment. *See United States v. Pope*, 613 F.3d 1255, 1261 (10th Cir. 2010) (Gorsuch, J.) ("Even '*latent* factual disputes over circumstances surrounding the commission of the alleged offense can sometimes prevent pretrial determination of a defense.'" (emphasis in original; citation omitted)). Here, the factual dispute over willfulness is at least latent. *See id.*

**3. Due Process**

Dr. Bynon argues that this prosecution violates his due process rights because: (a) internal holds were not prohibited by several entities before April 2026; (b) the government's claims inevitably turn on a theory of medical malpractice, which is not criminal; (c) the government does not allege that he violated a specific statute or regulation so to provide him fair notice; and (d) the § 1035(a)(2) scienter element does not foreclose a due process challenge. (Docket Entry No. 135 at 19–33). His arguments do not justify pretrial dismissal.

**a. Internal Holds**

Dr. Bynon argues that "permit[ting] the [United States] to prosecute Dr. Bynon for his conduct in 2023 and 2024" "would be fundamentally unfair" because "the use of internal holds for reasons other than patients with COVID was not clearly prohibited under the policies of UNOS, OPTN, and HRSA." (*Id.* at 23). The government disputes this characterization of the use of

internal holds. (*See generally* Docket Entry Nos. 128, 159). The fact that Dr. Bynon relies on UNOS guidance and industry practice to argue that he did not knowingly and willfully make a false statement abates this fair-notice concern. *See Bynon*, 2026 WL 1595296, at *11 (citing *Wooden v. United States*, 595 U.S. 360, 378–79 (2022) (Kavanaugh, J., concurring) (explaining that a "fair notice" defense may be needed "if a federal criminal statute does not contain a 'willfulness' requirement")).

**b. Medical Malpractice**

Dr. Bynon asserts that "[p]rosecuting [him] under 18 U.S.C. § 1035 in 2026 based on something that was not objectively contrary to a clearly established standard of care in 2023 and 2024 violates due process." (Docket Entry No. 135 at 25). He acknowledges that "[a]t the very least, the practice was in a gray area of what was medically permissible." (*Id.*). Dr. Bynon argues that "[t]he absence of any ascertainable standard is confirmed by the difficulty of instructing a jury." (*Id.* at 27). The court must, at this stage, "assume[] the truth of the allegations in the indictment and reflect[] the evidence in the light most favorable to the government." *Burger*, 170 F.4th at 396 (citing *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004)); (Docket Entry No. 128). These requirements make pretrial dismissal difficult. *See id.* The added anticipated "difficulty of instructing the jury" does not suffice to justify pretrial dismissal. (*Cf.* Docket Entry No. 135 at 27).

**c. Statute or Regulation**

Dr. Bynon maintains that "the government has identified nothing to challenge." (Docket Entry No. 135 at 28). But the indictment sets out the elements of the charged statute—18 U.S.C. § 1035. (Docket Entry No. 128 ¶¶ 1–23). "The test for sufficiency is 'not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimum

constitutional standards"; namely that it '[(1)] contain [] the elements of the offense charged and fairly inform[] a defendant of the charge against which he must defend, and [(2)], enable[] him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *Kay*, 359 F.3d at 742 (citation omitted; alterations in original). The indictment "fairly inform[s] [Dr. Bynon] of the charge against which he must defend" and "enable[s] him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *See id.*; (Docket Entry No. 128 ¶¶ 1–23). The indictment cannot be dismissed on the ground that it fails to "conform[] to minimum constitutional standards." *See Kay*, 359 F.3d at 742.

**d. Scienter**

Dr. Bynon argues that the scienter element does not foreclose a due process challenge and that "[t]he government . . . is arbitrarily prosecuting him under § 1035(a)(2)[.]" (Docket Entry No. 135 at 30). His contentions are unavailing, for two reasons. First, "[g]enerally, criminal statutes provide that notice by including an element of mens rea . . . ." *United States v. Gonzalez*, 857 F.3d 46, 54 (1st Cir. 2017). Section 1035 requires willfulness and knowledge. 18 U.S.C. § 1035. "The requirement that a defendant act willfully or purposefully largely vitiates the objection that a statute criminalizes conduct a defendant did not know was wrongful." *United States v. Crow*, 504 F. App'x 285, 287 (5th Cir. 2012) (per curiam).

Second, "prosecutors have 'wide discretion over whether, how, and when to bring a case.'" *United States v. Torrez*, 869 F.3d 291, 312 (4th Cir. 2017) (quoting *United States v. Segal*, 495 F.3d 826, 833 (7th Cir. 2007)); *see also United States v. Goodwin*, 457 U.S. 368, 382 (1982) ("A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution."). Though Dr. Bynon urges that the government "is arbitrarily prosecuting him," he does not allege a vindictive prosecution or

"affirmatively show through objective evidence that the prosecutorial conduct at issue was motivated by some form of prosecutorial animus . . . ." *Cf. United States v. Jarrett*, 447 F.3d 520, 525 (2006) (citations omitted); *see also Segal*, 495 F.3d at 833 ("It remains a fact that a pretrial claim of vindictive prosecution is extraordinarily difficult to prove.").

## IV. Conclusion

The motion to dismiss, (Docket Entry No. 135), is denied on the present record. The court will separately address the remaining pending motions, (*see, e.g.*, Docket Entry Nos. 91, 99, 103, 120, 133, 136, 137, 139, and 140).

SIGNED on September 10, 2026, at Houston, Texas.

Lee H. Rosenthal
Senior United States District Judge