**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIM. NO. H-26-023 |
| | § | |
| JOHN STEVENSON BYNON, JR. | § | |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* REGARDING EXPERT TESTIMONY OF DR. ALEXOPOULOS (ECF No. 172)**

The government's motion seeks four prohibitions on the testimony of Dr. Sophoclis Alexopoulos. ECF No. 172 at 4. The defense does not oppose the government's motion, in part. Dr. Bynon will not ask Dr. Alexopoulos what Dr. Bynon knew, believed, or intended. Nor will he ask Dr. Alexopoulos whether Dr. Bynon reviewed any particular record; Dr. Alexopoulos has no personal knowledge of that. But the government's request, as written, would also bar testimony about what information a transplant surgical director generally has available and what the practice of liver transplantation consists of – subjects on which the government's own authorities permit expert testimony, and on which the defense must be heard if the government intends to argue from the absence of documentation.

Further, Dr. Bynon opposes the government's request to forbid Dr. Alexopoulos from testifying (1) that the five patients were medically unsuitable for transplantation on the dates the criteria were adjusted, and (2) that precluding donor offers was within the standard of care. That relief would exclude the defense case. It would also rest on a construction of Rule 704(b) that the Fifth Circuit has rejected and that this Court's own ruling on the motion to dismiss forecloses. The governing distinction is not difficult. Rule 704(b) bars an expert from stating an opinion on whether the defendant possessed the mental state that is an element of the offense. It does not prohibit an expert from describing a patient. Dr. Alexopoulos reviewed five sets of medical

records and formed opinions about those patients' clinical condition on particular dates and about what the standard of care permitted.

## I.
## Background

As the Court will recall, Dr. Bynon moved to dismiss the indictment(s) on the ground that the donor criteria adjustments were not assertions of "fact" capable of being "true" or "false," and – to the extent they "represented" anything – they were expressions of medical judgment designed to screen out unwanted offers for a particular patient. The Court denied the motion, but it made clear that "[b]y setting donor-acceptance criteria for a particular patient, a doctor may state an opinion about what organ donors are medically appropriate for that patient at that time," and that such an opinion "could be false if the doctor did not subjectively believe that the selected donor-acceptance criteria were medically appropriate." *United States v. Bynon*, 834 F. Supp. 3d 728, 741 (S.D. Tex. 2026).

The Court identified a theory available to the prosecution – that "the donor-acceptance criteria communicated that Dr. Bynon believed 'his patients were not healthy enough to accept a transplant' when … he knew or thought they were 'healthy enough to do so.'" *Id.* at 742. The Court concluded: "Although Dr. Bynon's medical judgments are largely insulated from § 1035 liability, narrow triable factual issues remain." *Id.*

## II.
## Dr. Alexopoulos's disclosure and report

Dr. Alexopoulos is a transplant surgeon. His report, served on the government in advance of trial, states that he reviewed the medical records of each of the five patients identified in the indictment and sets out his professional opinion regarding each patient's suitability for transplantation on the date Dr. Bynon adjusted the criteria. As the government's motion recites, Dr. Alexopoulos opines for each patient either that the patient "was not a suitable candidate to

proceed with liver transplantation" on that date or that "it would have been reasonable, clinically justified and within the standard of care to preclude [donor] offers on that date." ECF No. 172 at 2.

The report contains no opinion concerning Dr. Bynon's knowledge, belief, intent, or purpose. It does not state that Dr. Bynon reviewed any particular record, that he formed any particular judgment, or that he acted for any particular reason. Dr. Alexopoulos did not interview Dr. Bynon, and his conclusions rest on the contemporaneous medical records.

## III.
## The government's motion

The government nonetheless moves to preclude Dr. Alexopoulos from testifying: (1) that Dr. Bynon had access to or had reviewed the medical records at the time he adjusted a patient's donor criteria; (2) whether Dr. Bynon made a medical judgment call at that time; (3) that the adjustment was a proper exercise of his clinical judgment; and (4) what Dr. Bynon's state of mind was. ECF No. 172 at 4. It further asks the Court to forbid the defense from asking Dr. Alexopoulos "whether [Dr.] Bynon complied with relevant law or standards, either directly or in the form of hypothetical questions," and to bar any testimony "about what … a '*reasonable physician*' should have done." *Id.* at 4-5 (emphasis added).

## IV.
## Analysis

As an initial matter, it is ironic that in a criminal case – *explicitly charging* that Dr. Bynon did not follow "institutional custom," "accepted clinical practice," or the "legitimate exercise of the professional judgment and discretion ordinarily afforded to a similarly situated transplant physician," SSI ¶ 21, ECF No. 128 at 8-9; *see also id.* (alleging circumstances supporting "a reasonable inference" that false statements were made) – the government seeks to prohibit a viable defense against those charges.

**A. Dr. Bynon's state of mind**

As to Dr. Bynon's state of mind, Rule 702 permits a qualified expert to offer opinion testimony if the expert's specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue, and if the opinion rests on sufficient facts or data and principles reliably applied. Rule 704(a) provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Rule 704(b) carves out a single exception: in a criminal case, an expert "must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense."

Dr. Alexopoulos will offer no opinion concerning Dr. Bynon's knowledge, belief, intent, or purpose. Rule 704(b) forbids such testimony, and the defense will not seek it. The Fifth Circuit has construed the relevant rule narrowly: the Rule "prohibits experts from testifying as to … whether the defendant did or did not have the requisite state of mind" to be convicted of the offense. *United States v. Dotson*, 817 F.2d 1127, 1132 (5th Cir. 1987), *vacated in part on other grounds*, 821 F.2d 1034 (5th Cir. 1987). The prohibition is triggered when an expert "directly refer[s] to the defendant's intent, mental state, or mens rea." *United States v. Fisher*, 236 F. App'x 54, 56-57 (5th Cir. 2007) (unpublished) (quoting *United States v. Watson*, 260 F.3d 301, 309 (3d Cir. 2001)).

*Fisher* marks the line. The testimony held inadmissible there was an accountant's statement to the jury: "These are my observations and my personal, professional opinion. I do believe that he knew [what he was doing was wrong]." *Id.* The expert "thus told the jury that her assessment about [the defendant's] mental state was based on her expert opinion" and "directly referred to [the defendant's] mental state." *Id.*

No sentence of that kind appears in Dr. Alexopoulos's report, and the government does not claim otherwise. The opinions the government quotes – that a patient "was not a suitable candidate to proceed with liver transplantation," and that "it would have been reasonable, clinically justified and within the standard of care to preclude [donor] offers on that date" – describe patients and medical practice. They do not opine on a defendant's mental state.

*United States v. Hesson* is on point. The government's expert there, a clinical neuropsychologist, evaluated the medical files of eleven patients of the defendants' companies and testified that the companies' practice of evaluations and billing was "the most egregious case of inappropriate psychological care and billing" he had seen in twenty-seven years. 746 F. App'x 324, 331-32 (5th Cir. 2018) (unpublished). The defendants argued that this violated Rule 704(b). The Fifth Circuit disagreed, holding that "Rule 704(b)'s limitation is quite narrow" and that the testimony did not transgress it because "the majority was entirely unrelated to mental states" – the expert "largely discussed and evaluated the propriety of the psychological reports and Medicare reporting he reviewed." *Id.* at 332. Even where the testimony touched on intent, the court held, it "never broached the ultimate mens rea issue," and "[t]o the extent mental state is implicated by such statements, it is not the intent required for conviction." *Id.*

To the extent the motion rests on the premise that Dr. Alexopoulos's opinions bear on an issue the jury must decide, Rule 704(a) answers it: "[a]n opinion is not objectionable just because it embraces an ultimate issue." The drafters abolished the ultimate-issue rule and replaced it with the single, specific exception in Rule 704(b). Expert testimony that tends to support an inference about intent, without stating an opinion about intent, has never been barred; if it were, no defense expert could testify to anything material in a specific-intent prosecution, and no government expert could either.

**B. Liver transplantation as a practice**

On this issue, Dr. Bynon accepts the premise of the government's request insofar as it is directed at Dr. Bynon's personal conduct. Dr. Alexopoulos was not present, did not speak with Dr. Bynon, and has no basis to testify that Dr. Bynon opened a particular chart on a particular date or reviewed a particular laboratory value before entering a criteria change.

As written, however, the request is not limited to Dr. Bynon's personal conduct. It asks the Court to bar testimony "that Bynon had access to" medical records – a proposition about what information the systems make available to a transplant surgical director, not a proposition about what any individual did on any day. And read together with the government's further request to bar testimony about "what … a 'reasonable physician' should have done," the motion would foreclose the entire subject of how a transplant surgeon in Dr. Bynon's position obtains and maintains familiarity with the clinical status of patients on his program's waiting list.

That subject is ordinary expert testimony, and the government's own authorities establish that it is admissible. *United States v. Hebert* permitted a defense expert to "testify regarding how pharmacy is practiced, how compounding works, and what compounding pharmacists do on a daily basis," while excluding only "opinions as to the personal knowledge, state of mind or intent" of the defendants. 2017 WL 4891348, at *2 (W.D. La. Oct. 30, 2017). *Floyd v. Hefner* draws the identical line, permitting testimony "as to the standards of conduct applicable to directors in general." 556 F. Supp. 2d 617, 640 (S.D. Tex. 2008). Testimony that a transplant program's electronic record and allocation systems make a candidate's clinical information available to the surgical director, and that transplant surgeons customarily remain current on the status of their listed candidates, is testimony about how the specialty is practiced. It says nothing about what Dr. Bynon knew.

Dr. Bynon, therefore, does not oppose an order barring Dr. Alexopoulos from testifying that Dr. Bynon reviewed any particular record, and asks that the order be framed in those terms rather than in terms that also exclude testimony about availability and customary practice. The narrowing matters because of what the government has reserved for itself. Its retained expert has written that certain criteria changes are not "noted in the Memorial Hermann records and appear only to be known by Dr. Bynon," and that the changes were made "without rationale or documentation in the medical record." The government has told this Court that its expert "is entitled to draw negative inferences based on an absence of evidence." ECF No. 118 at 8.

The structure that produces is plain. The government would have its expert invite the jury to infer, from the absence of documentation, that Dr. Bynon acted without reference to his own patients' clinical condition – while an order on its request barred the defense expert from explaining what information was available to a surgeon in that role and what the practice of the specialty is. The defense would be disarmed on a proposition the government remains free to argue. That cannot be right. Testimony about how transplant medicine is practiced, what the standard of care requires of a transplant surgeon presented with documented clinical findings, and what a reasonable transplant physician would do is permissible defense evidence.

**C. Patients' clinical condition**

Relatedly, the government's motion treats the patients' clinical condition as collateral. This Court has already recognized that it is central. *See* Order, ECF No. 124 at 2 ("The government cannot delay calling Dr. Lynch and Dr. Cooper until rebuttal to testify to issues that are clearly central to, and likely to be raised in, the government's case in chief."). Whether these five patients were healthy enough to accept a transplant on the dates Dr. Bynon adjusted the criteria is an issue the government must address in its case in chief. Dr. Alexopoulos's opinion – that on each date

the patient was not a suitable candidate for transplantation, and that precluding offers was clinically justified – is responsive to that issue. It is evidence about patients, offered to meet a proposition about patients.

A jury asked to decide whether a physician believed criteria were medically appropriate must be permitted to learn whether they were medically appropriate. The objective question does not answer the subjective one; but it is the baseline against which the subjective one is assessed (even if wrong), and it is the kind of baseline a lay jury cannot construct for itself.

The government's position would leave the jury with the government's expert testimony that the conduct "fell well below the acceptable levels of medical care" and no competing medical evidence at all. Dr. Bynon's constitutional right to present a defense encompasses the right to offer competent, material evidence on a contested element. *See Holmes v. South Carolina*, 547 U.S. 319, 324-26 (2006).

In addition, the government's reliance on *United States v. Tucker* is misplaced. The excluded testimony there "centered on [the expert's] 'understanding from the facts that Mr. Tucker believed, and relied upon, advice from counsel and others that the trust certificates involved were not securities.'" 345 F.3d 320, 330 (5th Cir. 2003). The expert was to tell the jury what the defendant believed and what he relied upon. That is what makes such testimony a substitute for the defendant's own account, offered without the risk of cross-examination.

Similarly, in *United States v. Bilotto*, the court excluded testimony "that Defendant did, in fact, rely upon the advice of others and did not intend to commit fraud," reasoning that such testimony "would be pure speculation, because the expert has no personal knowledge as to whether Defendant relied upon the agent, nor does the expert have personal knowledge as to Defendant's intent." 2005 WL 5978665, at *2 (W.D. Tex. Sept. 27, 2005).

Neither case describes Dr. Alexopoulos. He will not testify that Dr. Bynon relied on anything, believed anything, or intended anything. He did not speak with Dr. Bynon. His opinions derive from medical records that exist independently of this prosecution. An expert who reasons from primary documents to a medical conclusion is not a proxy for the defendant; he is performing the function Rule 702 exists to permit. *Accord Hesson*, 746 F. App'x 324, 331 (expert's file review and propriety opinions did not "directly concern [the defendants'] mental state").

**D. Hypotheticals**

The government asks the Court to forbid hypothetical questions in advance and without limitation. In *United States v. Levine*, the government's expert psychologist answered hypothetical questions that closely mirrored the events of the charged bank robbery. 80 F.3d 129, 134-35 (5th Cir. 1996). The defendant objected that the "thinly veiled" hypotheticals elicited an opinion on an ultimate issue in violation of Rule 704(b). The court rejected the argument, holding that the testimony did not improperly offer an opinion or inference as to whether the defendant had the mental state constituting an element of the offense, because it addressed whether facts similar to those in evidence were consistent with the conduct of a hypothetical person in the described condition. *Id.* The government was the proponent of the testimony in *Levine*. The form of examination it now asks the Court to forbid is one the United States has already successfully defended in this Circuit.

Respectfully submitted,

/s/ *Samy Khalil*
Samy Khalil
Texas Bar No. 24038997
John Kinchen
Texas Bar No. 00791027
**KHALIL KINCHEN LLP**
4200 Montrose Blvd., Suite 440
Houston, Texas 77006
713.904.4477
samy@khalilkinchen.com
john@khalilkinchen.com

Brent Evan Newton
Attorney at Law
Texas Bar No. 00788115
19 Treworthy Road
Gaithersburg, Maryland 20878
202.975.9105
brentevannewton@gmail.com

*Attorneys for Dr. Steve Bynon*

## CERTIFICATE OF SERVICE

On October 12, 2026, I served a copy of this pleading via ECF on counsel for the government.

/s/ *Samy Khalil*
Samy Khalil